1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHANNA FISHER, et al., | Case No. 1:20-cv-01471-NONE-EPG |
| Plaintiffs, | FINDINGS AND RECOMMENDATION TO: |
| v. | (1) GRANT CALIFORNIA MILITARY DEPARTMENT'S MOTION TO DISMISS (ECF No. 25); |
| ARMY NATIONAL GUARD, et al., | |
| Defendants. | (2) GRANT IN PART AND DENY IN PART PORTERVILLE UNIFIED SCHOOL DISTRICT'S MOTION TO DISMISS (ECF No. 33); |
| | (3) GRANT NATIONAL GUARD'S MOTION TO DISMISS (ECF No. 39); |
| | (4) DISMISS § 1983 CLAIM AGAINST DEFENDANT CALIFORNIA MILITARY DEPARTMENT AND THE FIRST AMENDED COMPLAINT'S THIRD, FIFTH, AND SIXTH CAUSES OF ACTION WITHOUT LEAVE TO AMEND (ECF No. 19); AND |
| | (5) GRANT PLAINTIFFS LEAVE TO FILE A SECOND AMENDED COMPLAINT |
| | OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Johanna Fisher, individually and on behalf of her minor child J.G. (collectively, "Plaintiffs"), filed the complaint commencing this action on October 15, 2020, and a first amended complaint ("FAC") on January 29, 2021. (ECF Nos. 1, 19).  On February 22, 2021,

1   Defendant California Military Department ("CMD") filed a motion to dismiss. (ECF No. 25). On

2   March 22, 2021, Defendant Porterville Unified School District ("PUSD") filed a motion to

3   dismiss. (ECF No. 33). On June 11, 2021, Defendants Army National Guard and California

4   Army National Guard (collectively, the "National Guard") filed a motion to dismiss. (ECF No.

5   39). On October 20, 2021, the District Judge referred the motions to dismiss to the undersigned.

6   (ECF No. 42).

7        For the reasons described below, the undersigned recommends that Defendant CMD's

8   motion to dismiss (ECF No. 25) be granted, Defendant PUSD's motion to dismiss (ECF No. 33)

9   be granted in part and denied in part, and Defendant National Guard's motion to dismiss (ECF

10  No. 39) be granted.

11  **I.      SUMMARY OF ALLEGATIONS**

12       The FAC alleges as follows:

13       In or around August 2018, Plaintiff J.G. started school at the Porterville Military

14  Academy ("PMA") of the Porterville Unified School District ("PUSD"), and soon thereafter,

15  J.G. met James Van Norton. Mr. Van Norton was a teacher at PMA and an active member of the

16  Army National Guard and/or California Army National Guard and/or the California Military

17  Department. The National Guard and/or CMD helped to vet, recommend, and place Mr. Van

18  Norton at PMA/PUSD. J.G. first met Mr. Van Norton at an entrance camp in San Luis Obispo as

19  part of PMA's cadet corps. J.G. later saw Mr. Van Norton on the PMA campus.

20       A couple of weeks later, Mr. Van Norton approached J.G. in between classes. Noting that

21  J.G. appeared to be struggling, Mr. Van Norton said that if J.G. needed someone to speak with,

22  then he was there for her. On or about October 15, 2018, J.G. attempted to cut her wrists during a

23  bathroom break. Later that day, J.G. decided to speak with Mr. Van Norton about what had

24  happened, and he took her to the school office, which provided her with a mental health referral.

25  J.G. was asked to make a list of people she could turn to if something similar happened in the

26  future. She included Mr. Van Norton on the list. The following day, J.G. commenced visiting

27  Mr. Van Norton's classroom during breaks and lunch on practically a daily basis. The classroom

28  typically had other students during those times.

At some point during these classroom visits, Mr. Van Norton shared his Snapchat and Instagram accounts with J.G. and these other students. Initially after J.G. connected with Mr. Van Norton's social media accounts, the communications from Mr. Van Norton were mostly banal and motivational. The nature of the communications soon changed to include odd emojis and pictures of Mr. Van Norton in his shorts or holding a beer. Mr. Van Norton dismissed these communications by stating that he "can't believe I said that" and started to join in with other students in telling dirty jokes in the classroom during breaks.

Mr. Van Norton's texts and social media communications to J.G. began to become more frequent, including during school hours, and he started to call J.G. beautiful. One day after morning break J.G. was about to leave his classroom right after the other students left when Mr. Van Norton closed the door, pushed J.G. against the wall, and kissed her. Later that same morning, Mr. Van Norton texted J.G. to ask her what she thought about what happened. J.G. said she was surprised, and Mr. Van Norton said he was surprised that she kissed him back. He also told J.G. not to tell anyone about what happened because he would lose his job. J.G. returned to Mr. Van Norton's classroom during lunch. She again was the last to leave following lunch, and Mr. Van Norton kissed her again. He then said she should go to class because she would be in trouble if she was late. J.G. did not understand what was happening, but she thought Mr. Van Norton was there to help her.

During the rest of October 2018, it became normal for J.G. to stay in Mr. Van Norton's classroom during morning break and lunch after everyone else left, and Mr. Van Norton would kiss her. These encounters began lasting longer, and Mr. Van Norton would give J.G. a pass if she was late to class. This, in turn, preempted the school calling J.G.'s mother regarding J.G.'s tardiness. Mr. Van Norton also started touching J.G.'s waist, thigh, buttocks, and crotch. In late October 2018, Mr. Van Norton started laying J.G. down on the table behind his desk and would touch her all over. Initially the petting was over the clothes, but by early November 2018, Mr. Van Norton touched J.G.'s chest and crotch under her clothes.

Through November, texting and social media communications became more graphic and controlling. After Halloween 2018, Mr. Van Norton started to give J.G. gifts, such as stuffed

monkeys, tongue piercings, and AirPods. Mr. Van Norton began performing oral sex on J.G. in his classroom and would rub his body against her. Mr. Van Norton persuaded J.G. to perform oral sex on him. J.G. did not have any experience with groping or oral sex prior to her interactions with Mr. Van Norton. While both were working on a school float for the Veteran's Day Parade, Mr. Van Norton told J.G. to meet him behind one of the school buildings where he kissed and groped her.

In mid-November 2018, Mr. Van Norton was put on leave by the school for other issues but continued to text J.G. and make arrangements to meet with her. In late November 2018, Mr. Van Norton arranged to meet J.G. during a basketball tournament in his vehicle in the school parking lot. He pulled her pants down and groped her.

In December 2018, Mr. Van Norton began meeting J.G. near her home. The kissing, groping, and oral sex continued in his vehicle. Mr. Van Norton would tell J.G. that he wanted to divorce his wife and go away with J.G. J.G. thought that he would marry her.

On or about December 22 or 23, 2018, J.G. and Mr. Van Norton had vaginal sex for the first time. It occurred in Mr. Van Norton's vehicle near J.G.'s home. Mr. Van Norton had been encouraging J.G. to have vaginal sex when she was ready. Although J.G. did not feel ready, Mr. Van Norton convinced her that it was going to be okay and that she could trust him. After the December 22 or 23, 2018 interaction, J.G.'s encounters with Mr. Van Norton would typically involve vaginal sex. Mr. Van Norton continued to warn J.G. to not say anything about their relationship because he would get in trouble.

On or about March 20, 2019, Mr. Van Norton arranged to meet with J.G. near her home at around 3 a.m. J.G.'s mother noticed that J.G. was not home and called the police. When J.G. came home, she said she went for a walk. Later that day, J.G.'s mother asked to see J.G.'s phone and saw many inappropriate Instagram messages from Mr. Van Norton. The Sheriffs were called, and J.G. admitted to what had been occurring between her and Mr. Van Norton. Soon thereafter, Mr. Van Norton was arrested. A felony complaint has been filed against him, and a criminal protective order is in place.

*///*

1      The FAC alleges that Defendants knew or should have known about the dangers that Mr.

2 Van Norton presented to students like J.G. as there had been similar allegations and

3 investigations at his prior school and other PUSD students had complained of Mr. Van Norton's

4 inappropriate behavior to the National Guard and/or CMD officials. For example, Nathaniel

5 Gomez (a student at Porterville High School who was in the cadet corps) reported to Captain

6 Archer with PUSD that he had seen Mr. Van Norton acting inappropriately at the entrance camp

7 in San Luis Obispo in August 2018, but Captain Archer brushed aside the allegations.

8      The FAC raises the following claims: (1) violations of the Fourth and/or Fourteenth

9 Amendments pursuant to 42 U.S.C. § 1983 and <u>Bivens</u> against Army National Guard, California

10 Army National Guard, and California Military Department; (2) negligence against all Defendants

11 and Does 1 to 10; (3) negligent infliction of emotional distress against Army National Guard,

12 California Army National Guard, and California Military Department (collectively, "Military

13 Defendants"), and Does 1 to 10; (4) breach of fiduciary duty against Military Defendants and

14 Does 1 to 10; (5) violation of the Federal Tort Claims Act against Army National Guard and

15 Does 1 to 10; (6) violation of the California Government Tort Claims Act against California

16 Army National Guard, California Military Department, and Does 1 to 10; (7) violation of the

17 National Guard Claims Act against Army National Guard, California Army National Guard, and

18 Does 1 to 10; (8) negligent retention and supervision of staff against Porterville United School

19 District; and (9) misrepresentation against Porterville United School District.

20 **II.  LEGAL STANDARDS**

21     **A.  Motion to Dismiss**

22      In considering a motion to dismiss, the Court must accept all allegations of material fact

23 in the complaint as true. <u>Erickson v. Pardus</u>, 551 U.S. 89, 93–94 (2007); <u>Hosp. Bldg. Co. v. Rex</u>

24 <u>Hosp. Trustees</u>, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the

25 light most favorable to the plaintiff. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>abrogated on</u>

26 <u>other grounds by</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Barnett v. Centoni</u>, 31 F.3d 813,

27 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's

28 favor. <u>See</u> <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must

1 be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler,

2 627 F.3d 338, 342 (9th Cir. 2010).

3    A motion to dismiss pursuant to Rule 12(b)(1) is a challenge to the court's subject matter

4 jurisdiction. See Fed. R. Civ. P. 12 (b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or

5 factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing White v.

6 Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the

7 allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."

8 Safe Air, 373 F.3d at 1039. "By contrast, in a factual attack, the challenger disputes the truth of

9 the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id.

10    A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the

11 complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Rule 8(a)(2) requires only "a short

12 and plain statement of the claim showing that the pleader is entitled to relief" in order to "give

13 the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell

14 Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

15 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant

16 is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236.

17    The first step in testing the sufficiency of the complaint is to identify any conclusory

18 allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action,

19 supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S.

20 at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires

21 more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

22 will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

23    After assuming the veracity of all well-pleaded factual allegations, the second step is for

24 the court to determine whether the complaint pleads "a claim to relief that is plausible on its

25 face." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (rejecting the traditional 12(b)(6)

26 standard set forth in Conley, 355 U.S. at 45–46). A claim is facially plausible when the plaintiff

27 "pleads factual content that allows the court to draw the reasonable inference that the defendant

28 is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

1   The standard for plausibility is not akin to a "probability requirement," but it requires "more than

2   a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

3          In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

4   outside the complaint and pleadings. Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

5   Gumataotao v. Dir. of Dep't of Revenue & Taxation, 236 F.3d 1077, 1083 (9th Cir. 2001).

6          **B.  Leave to Amend**

7          Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P.

8   15(a)(2). "[P]ublic policy strongly encourages courts to permit amendments," and "[t]he policy

9   of allowing amendments 'is to be applied with extreme liberality.'" Waldrip v. Hall, 548 F.3d

10  729, 732 (9th Cir. 2008) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712

11  (9th Cir. 2001)). "However, 'liberality in granting leave to amend is subject to several

12  limitations.'" Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th

13  Cir. 2011) (quoting Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989)). A

14  court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith, or

15  dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments

16  previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment."

17  Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in

18  original) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

19         "Not all of the factors merit equal weight." Eminence Capital, LLC v. Aspeon, Inc., 316

20  F.3d 1048, 1052 (9th Cir. 2003). "Futility of amendment can, by itself, justify the denial of a

21  motion for leave to amend," Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995), but

22  "[u]ndue delay by itself is insufficient to justify denying leave to amend," United States v.

23  United Healthcare Ins. Co., 848 F.3d 1161, 1167 (9th Cir. 2016). "[I]t is the consideration of

24  prejudice to the opposing party that carries the greatest weight." Eminence Capital, 316 F.3d at

25  1052. "Absent prejudice, or a strong showing of any of the remaining [ ] factors, there exists

26  a *presumption* under Rule 15(a) in favor of granting leave to amend." Id.

27  ///

28  ///

7

III.   **DISCUSSION**

**A.  California Military Department**

Defendant CMD moves to dismiss all claims asserted against CMD pursuant to Rule 12(b)(6), arguing that: (1) the Eleventh Amendment bars Plaintiffs' 42 U.S.C. § 1983 claim against CMD, a public entity; (2) Plaintiffs' state-law claims against CMD are fatally deficient because they do not plead the statutory basis for the claims; and (3) the Second, Third, Fourth, and Sixth Causes of Action for negligence, breach of fiduciary duty, and violation of the California Government Claims Act fail to plead sufficient facts to state any cognizable claim. (ECF No. 25 at 1–2).[1]

1.   Eleventh Amendment Immunity

"The Eleventh Amendment protects states and state instrumentalities. . . from suit in federal court." Doe v. Regents of the Univ. of Cal., 891 F.3d 1147, 1153 (9th Cir. 2018) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 (1984)). See also Mitchell v. Los Angeles Cmty. Coll. Dist., 861 F.2d 198, 201 (9th Cir.1989) ("Under the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court."). "This immunity is not absolute, however, and 'a State may waive its sovereign immunity by consenting to suit.'" In re Pegasus Gold Corp., 394 F.3d 1189, 1195 (9th Cir. 2005) (quoting Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999)). "[A] waiver of a State's sovereign immunity must be unequivocal." Ramsey v. Muna, 849 F.3d 858, 860 (9th Cir. 2017) (citing Pennhurst, 465 U.S. at 99). "That means a waiver will be found 'only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" Ramsey, 849 F.3d at 860–61 (quoting Edelman v. Jordan, 415 U.S. 651, 673 (1974)).

Defendant CMD argues that it has absolute immunity under the Eleventh Amendment as a state agency and that district judges in the Eastern District of California have repeatedly dismissed § 1983 claims against CMD based on sovereign immunity. (ECF No. 25-1 at 5). In the

---

[1] Citations refer to the pagination assigned by the CM/ECF system.

1   opposition, Plaintiffs contend that California waived its immunity through California

2   Government Code sections 815.2(a) and 820(a). (ECF No. 31 at 4).

3         California Government Code section 815.2(a) provides:

> A public entity is liable for injury proximately caused by an act or
> omission of an employee of the public entity within the scope of
> his employment if the act or omission would, apart from this
> section, have given rise to a cause of action against that employee
> or his personal representative.

7   Cal. Gov't Code § 815.2(a). California Government Code section 820(a) provides: "Except as

8   otherwise provided by statute (including Section 820.2), a public employee is liable for injury

9   caused by his act or omission to the same extent as a private person." Cal. Gov't Code § 820(a).

10         The Supreme Court "consistently has held that a State's waiver of sovereign immunity in

11   its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts."

12   Pennhurst, 465 U.S. at 100 n.9 (citing Fla. Dep't of Health v. Fla. Nursing Home Ass'n, 450 U.S.

13   147, 150 (1981) (per curiam)). Courts in this circuit have held that California Government Code

14   section 815.2 does not constitute a waiver of sovereign immunity. See, e.g., Lipsey v. Reddy,

15   No. 2:17-cv-1434-KJM-EFB P, 2020 WL 5569707, at *2 (E.D. Cal. Sept. 17, 2020), report and

16   recommendation adopted, No. 2:17-cv-1434-KJM-JDP-P, 2021 WL 1022700 (E.D. Cal. Mar. 17,

17   2021); Bishop v. Harris, No. EDCV 19-1607 PSG (SPx), 2020 WL 2412362, at *3–4 (C.D. Cal.

18   Jan. 17, 2020); Muniz v. Pfeiffer, No. 1:19-CV-0233-LJO-JLT, 2019 WL 4596649, at *15 (E.D.

19   Cal. Sept. 23, 2019) ("In Plaintiffs' brief in opposition to the motion to dismiss, they cite to

20   various statutes, *inter alia* California Gov't Code §§ 815.2, 815.4, 835, in support of the

21   argument that the state has consented to the present lawsuit and thereby waived its sovereign

22   immunity. These arguments and the cited authority fail to demonstrate that the state has

23   unequivocally waived sovereign immunity in the present case." (citations omitted)). In addition,

24   a district judge in the Central District of California has held that California Government Code

25   section 820 does not constitute a waiver of sovereign immunity and thus, the plaintiffs' § 1983

26   claims against defendants were foreclosed by the Eleventh Amendment. A. K. L. v. Moreno

27   Valley Unified Sch. Dist., No. EDCV 18-430 JGB (SHKx), 2021 WL 4352368, at *7 (C.D. Cal.

28   Apr. 1, 2021), reconsideration denied, 2021 WL 4352362 (C.D. Cal. May 21, 2021).

1    Accordingly, the undersigned recommends that the § 1983 claim against Defendant CMD

2    be dismissed without leave to amend based on Eleventh Amendment immunity. See Ford v.

3    Artiga, No. 2:12-CV-02370-KJM-AC, 2013 WL 820146, at *3 (E.D. Cal. Mar. 5, 2013)

4    ("Because the Eleventh Amendment bars [plaintiff]'s claims against CMD, the court grants

5    CMD's motion to dismiss each of [plaintiff]'s claims against it.").

6              2.   Second, Third, and Fourth Causes of Action

7    Defendant CMD asserts that the Second, Third, and Fourth Causes of Action should be

8    dismissed because "nowhere in each respective cause of action did they identify the statute that

9    permits them to hold CMD liable for negligence, negligent hiring, supervision, training and

10   retention, negligent infliction of emotional distress, or breach of fiduciary duty." (ECF No. 25-1

11   at 6). Defendant CMD argues that although California Government Code sections 815.2 and 820

12   were cited in the factual background of the FAC, "neither section was cited in the Second to

13   Fourth Causes of Action, nor did Plaintiffs plead any facts to show that Van Norton was a CMD

14   employee such that § 815.2 or 820 would apply to CMD." (Id.). In the opposition, Plaintiffs

15   assert that the Second, Third, and Fourth Causes of Action incorporate by reference the

16   preceding allegations, including Exhibit III.C, which cites to California Government Code

17   sections 815.2(a) and 820(a), and thus, the "statutory basis for each of these claims is California

18   Government Code sections 815.2(a) and 820(a)." (ECF No. 31 at 5). Plaintiffs contend that the

19   FAC alleges that Mr. Van Norton was CMD's employee and that they have "alleged facts

20   sufficient to establish that Plaintiffs were harmed by the acts of Mr. Van Norton and by those

21   other CMD employees who were acting within the scope of their employment." (ECF No. 31 at

22   5, 6).

23   "In California, a governmental entity can only be sued in tort pursuant to an authorizing

24   statute or enactment." Van Ort v. Est. of Stanewich, 92 F.3d 831, 840 (9th Cir. 1996) (citing

25   Lopez v. S. Cal. Rapid Transit Dist., 40 Cal.3d 780, 785 n.2 (1985); Searcy v. Hemet Unified

26   Sch. Dist., 177 Cal. App. 3d 792, 798 (1986)). "[T]o state a cause of action every fact essential to

27   the existence of statutory liability must be pleaded with particularity, including the existence of a

28   statutory duty." Searcy, 177 Cal. App. 3d at 802. "Since the duty of a governmental agency can

only be created by statute or 'enactment,' the statute or 'enactment' claimed to establish the duty

must at the very least be identified." Id.

> As to vicarious liability, Section 815.2(a) of the California
> Government Code "expressly makes the doctrine of *respondeat
> superior* applicable to public employers." Hoff, 19 Cal.4th at 932.
> Specifically, a "public entity is liable for injury proximately caused
> by an act or omission of an employee of the public entity within
> the scope of his employment if the act or omission would . . . have
> given rise to a cause of action against that employee or his personal
> representative." Cal. Gov. Code § 815.2(a). Direct liability, for its
> part, "must be based on a specific statute declaring [public entities]
> to be liable, or at least creating some specific duty of care" on the
> part of public entities. Eastburn v. Reg'l Fire Prot. Auth., 31 Cal.
> 4th 1175, 1183 (2003); Leon v. County of Riverside, 64 Cal. App.
> 5th 837, 850 (2021).

Mullins v. Cty. of Fresno, No. 1:21-cv-00405-AWI-SAB, 2021 WL 5304015, at *7 (E.D. Cal.

Nov. 15, 2021). Thus, whether pursuing a theory of vicarious or direct liability, "a plaintiff must

plead the statutory basis for a claim against a government entity," and "[f]ailure to do so

provides a ground for dismissal under Rule 12(b)(6)." Id. (citations omitted).

Here, Plaintiffs' Second, Third, and Fourth Causes of Action "refer to and incorporate[]

by reference Sections I through III inclusive" of the FAC. (ECF No. 19 at 11, 12, 13). Exhibit

III.C., in turn, states in pertinent part:

> Pursuant to Government Code section 820(a), "a public employee
> is liable for injury caused by his act or omission to the same extent
> as a private person." In addition, under Government Code section
> 815.2(a), "[a] public entity is liable for injury proximately caused
> by an act or omission of an employee of the public entity within
> the scope of his employment if the act or omission would . . . have
> given rise to a cause of action against that employee." Thus, since
> the PMA staff are employees of Defendants, and since it was
> reasonably foreseeable that PMA students would be harmed by the
> circumstances described above, then Defendants are similarly
> liable through respondeat superior for such actions.

(ECF No. 19 at 8).

Plaintiffs incorporate by reference California Government Code sections 815.2(a) and

820(a) in their Second, Third, and Fourth Causes of Action. Section 815.2(a) of the California

Government Code "expressly makes the doctrine of *respondeat superior* applicable to public

employers." Mullins, 2021 WL 5304015, at *7 (quoting Hoff v. Vacaville Unified Sch. Dist., 19

Cal.4th 925, 932 (1998)). However, Plaintiffs have failed to plead with particularity every fact

essential to the existence of statutory liability. No specific facts were alleged that CMD employed Mr. Van Norton or Captain Archer, that CMD had control over PUSD/PMA staff,[2] or that any CMD employee was involved in the conduct at issue. Rather, the FAC alleges that Mr. Van Norton "was also an active member of the Army National Guard and/or California Army National Guard (collectively "National Guard"), and/or California Military Department ("CMD") which National Guard and/or CMD helped to vet, recommend and place Mr. Van Norton at PMA/PUSD." (ECF No. 19 at 6).

Additionally, the allegations specifically included in the Second, Third, and Fourth Cause of Action (rather than incorporated by reference) regarding Defendants' failure to protect, failure to warn, failure to establish appropriate policies, procedures, and actions, and negligent vetting, hiring, supervising, retaining, placement, and training of employees sound in direct liability, and Plaintiffs have failed to identify the statutory basis for direct liability. See H.B. v. City of Torrance, No. CV 17-02373 SJO (GJS), 2017 WL 10518108, at *3 (C.D. Cal. Aug. 16, 2017) (stating that a "claim based on negligent hiring is generally 'one of direct liability for negligence, not vicarious liability.' (quoting Phillips v. TLC Plumbing, Inc., 172 Cal. App. 4th 1133, 1139 (2009))); Munoz v. City of Union City, 120 Cal. App. 4th 1077, 1112 (2004) (noting that allegations of "negligence in the selection, training, retention, supervision, and discipline of police officers as well as the failure to enact procedures and policies guiding law enforcement officers 'in the handling of critical incidents'" concerned direct liability rather than *respondeat superior*), as modified on denial of reh'g (Aug. 17, 2004), disapproved of on other grounds by Hayes v. Cty. of San Diego, 57 Cal. 4th 622 (2013); Eastburn v. Reg'l Fire Prot. Auth., 31 Cal. 4th 1175, 1183 (2003) (finding that "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on . . . general tort provisions").

---

[2] "Under California law, 'an employer may be held vicariously liable for torts committed by an employee within the scope of employment.'" Doe v. Uber Techs., Inc., 184 F. Supp. 3d 774, 781 (N.D. Cal. 2016) (quoting Mary M. v. City of Los Angeles, 54 Cal.3d 202, 208 (1991)). "The prevailing view [to determine whether an individual is classified as an employee] is to consider the totality of the circumstances, reflecting upon the nature of the work relationship between the parties, and placing emphasis on the control exercised by the employer over the employee's performance of employment duties." Doe, 184 F. Supp. 3d at 781 (quoting Bradley v. Cal. Dep't of Corrs. and Rehab., 158 Cal.App.4th 1612, 1626 (2008)).

1    Based on the foregoing, Plaintiff's Second, Third, and Fourth Causes of Action are not

2    pleaded with particularity and fail to adequately identify a specific statutory basis for direct

3    liability. Accordingly, the undersigned recommends that the Second, Third, and Fourth Causes of

4    Action be dismissed[3] with leave to amend the Second and Fourth Causes of Action.[4] See

5    Blanchard v. Cty. of Los Angeles, No. SACV 19-02438 JVS (DFMx), 2020 WL 5921805, at *6

6    (C.D. Cal. Aug. 12, 2020) (dismissing claims for failure "to assert specific facts demonstrating

7    [defendant]'s liability under each prospective statute" where plaintiff "use[d] reincorporation by

8    reference to lump all preceding allegations of fact into each proceeding claim without clarifying

9    which portions of the FAC are relevant to each particular claim" and where one claim

10   incorporated by reference "without independently mentioning any statute").

11              3.   California Government Tort Claims Act

12   Defendant CMD argues that "the Sixth Cause of Action simply amounts to Plaintiffs'

13   assertion that they complied with the" California Government Tort Claims Act and thus fails to

14   state a cognizable claim because "Plaintiffs did not allege any facts to show what section, if any,

15   . . . CMD violated and how that purported violation gives rise to a separate and distinct claim for

16   relief." (ECF No. 25-1 at 11). Plaintiffs agree with Defendant CMD that "their Sixth Cause of

17   Action is properly read together with the other causes of action, and may not actually be a

18   separate cause of action, but should instead be viewed as general allegations of the FAC." (ECF

19   No. 31 at 8). Accordingly, the undersigned recommends that the Sixth Cause of Action be

20   dismissed without leave to amend.

21         **B.  Porterville Unified School District**

22   Defendant PUSD moves to dismiss[5] pursuant to Rule 12(b)(6), arguing that: (1) the First,

---

[3] In light of this conclusion, the Court does not address Defendant CMD's argument that the FAC fails to allege sufficient facts regarding the duty of care owed to Plaintiffs because it is unclear whether Plaintiffs proceed on a theory of vicarious or direct liability, which in turn affects whether there was a duty of care owed to Plaintiffs by whom.

[4] For the reasons stated in section III(C)(2)(d), infra, the undersigned recommends that the Third Cause of Action be dismissed without leave to amend.

[5] In the opposition, Plaintiffs note that the hearing for PUSD's motion to dismiss, and the accompanying deadlines to respond, are untimely under the Local Rules. (ECF No. 36 at 5). Plaintiffs and Defendant PUSD agree that PUSD's motion to dismiss was not timely filed in light of the noticed hearing date. However, as Plaintiffs' counsel does not contend that there was any prejudice resulting from the error, the Court will rule on PUSD's motion to dismiss.

1  Second, Eighth, and Tenth Causes of Action fail to allege any statutorily based theory of
2  liability; (2) Plaintiff Fisher fails to allege any facts showing that Defendant PUSD owed her a
3  duty of care; and (3) Plaintiffs' Tenth Cause of Action fails to allege sufficient facts to sustain a
4  cause of action for misrepresentation under California law. (ECF No. 33 at 1–2).

5           1.   First, Second, and Eighth Causes of Action

6           The FAC's First Cause of Action alleges violations of the Fourth and/or Fourteenth
7  Amendments pursuant to 42 U.S.C. § 1983 and Bivens against Army National Guard, California
8  Army National Guard, and California Military Department. (ECF No. 19 at 3, 5). As the First
9  Cause of Action does not assert a negligence claim against PUSD, the undersigned recommends
10 that Defendant PUSD's motion to dismiss be denied with respect to the First Cause of Action.

11          "In California, a governmental entity can only be sued in tort pursuant to an authorizing
12 statute or enactment." Van Ort, 92 F.3d at 840. "[T]o state a cause of action every fact essential
13 to the existence of statutory liability must be pleaded with particularity, including the existence
14 of a statutory duty." Searcy, 177 Cal. App. 3d at 802. Thus, "a plaintiff must plead the statutory
15 basis for a claim against a government entity," and "[f]ailure to do so provides a ground for
16 dismissal under Rule 12(b)(6)." Mullins, 2021 WL 5304015, at *7.

17          Here, Plaintiffs' Second and Eighth Causes of Action "refer to and incorporate[] by
18 reference Sections I through III inclusive" of the FAC. (ECF No. 19 at 11, 15). Exhibit III.C., in
19 turn, cites to California Government Code sections 815.2(a) and 820(a). (ECF No. 19 at 8). Thus,
20 Plaintiffs have identified and incorporated by reference California Government Code sections
21 815.2(a) and 820(a) in their Second and Eighth Causes of Action.

22          Defendant PUSD "does not disagree that Government Code § 815.2 provides for
23 vicarious liability for causes of action against an employee acting within the course and scope of
24 their employment," but clarifies that it moves to dismiss based on Plaintiff Fisher's failure "to
25 allege facts sufficient to sustain a claim for relief against Defendant PUSD for direct liability."
26 (ECF No. 37 at 2). "Plaintiffs maintain that they have properly alleged a theory for derivative
27 liability," and "in addition to establishing Defendant's derivative liability, Plaintiffs are prepared
28 if necessary to amend the FAC to more fully allege a theory of direct liability." (ECF No. 36 at

8). As Plaintiffs fail to adequately identify a specific statutory basis for direct liability, the undersigned recommends that the Second and Eighth Causes of Action be dismissed.[6]

The Court now turns to whether leave to amend should be granted. "Plaintiffs are prepared if necessary to amend the FAC to more fully allege a theory of direct liability." (ECF No. 36 at 8). Defendant PUSD responds that "none of the statutes cited [by Plaintiffs in the opposition] set forth a mandatory duty imposed on Defendant PUSD with respect to the parent of a student" to allege a claim for relief under the theory of direct liability.

Courts "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), and this "policy of allowing amendments is to be applied with extreme liberality," Waldrip, 548 F.3d at 732 (internal quotation marks and citation omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith, or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment." Carvalho, 629 F.3d at 892–93 (alterations in original) (quoting Foman, 371 U.S. at 182). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend," Bonin, 59 F.3d at 845, but "[u]ndue delay by itself is insufficient to justify denying leave to amend," United Healthcare Ins. Co., 848 F.3d at 1167. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, 316 F.3d at 1052. "Absent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." Id.

Here, Defendant PUSD has not argued that granting leave to amend would cause prejudice, and there has not been a strong showing of any of the remaining factors. Accordingly, the undersigned finds that Plaintiffs should be granted leave to amend the Second and Eighth Causes of Action.

///

---

[6] In light of this conclusion, the Court does not address Defendant PUSD's argument that the FAC fails to allege sufficient facts regarding the duty of care owed to Plaintiff Fisher because Plaintiffs have not pleaded with particularity every fact essential to their theories of vicarious and direct liability, which in turn affects whether there was a duty of care owed to Plaintiff Fisher and by whom.

1        2.  <u>Misrepresentation</u>

2        Defendant PUSD asserts that Plaintiffs' Tenth Cause of Action for misrepresentation

3  should be dismissed because it fails to allege a statutorily based theory of liability and fails to

4  allege sufficient facts for a claim of misrepresentation. (ECF No. 33-1 at 5–6). Specifically,

5  Defendant PUSD argues that statements or predictions regarding future events are not actionable,

6  Plaintiffs fail to identify who made these representations, and Plaintiff "do not allege any causal

7  connection as to how the presence of security cameras would have changed Van Norton's actions

8  regarding alleged abuse of J.G." (ECF No. 33-1 at 6–7).

9        Plaintiffs argue that the Tenth Cause of Action incorporates by reference the preceding

10  allegations and thus, the statutory basis for this claim is California Government Code sections

11  815.2(a) and 820(a). (ECF No. 36 at 5–6). Plaintiffs contend that the FAC

12            adequately identif[ies] the misrepresentations at issue in this case,
and identif[ies] the how and by what means (false representation
13            that security cameras would be installed by the start of the school
year, which was also in violation of Defendant's written Campus
14            Security and Closed Campus policies), when and where (in an
orientation prior to opening the PMA campus), and to whom (to
15            parents at the orientation, including Ms. Fisher, and more generally
to the public as far as the Campus Security and Closed Campus
16            policies).

17  (ECF No. 36 at 11 (citation omitted)). With respect to the causal connection, Plaintiffs argue that

18  "since the alleged injuries by Mr. Van Norton began and many occurred in the classroom and on

19  campus, then there is a causal connection. Had security cameras been installed on the PMA

20  campus and in the PMA classrooms, then Mr. Van Norton would not have been able to harm

21  Plaintiffs as alleged in the FAC." (ECF No. 36 at 12 (citations omitted)).

22        Plaintiffs' Tenth Cause of Action specifically cites to California Government Code

23  sections 815.2(a) and 820(a), (ECF No. 19 at 17), and thus, identifies its statutory basis.

24            To state a claim for negligent misrepresentation [under California
law], a plaintiff must allege "[m]isrepresentation of a past or
25            existing material fact, without reasonable ground for believing it to
be true, and with intent to induce another's reliance on the fact
26            misrepresented; ignorance of the truth and justifiable reliance on
the misrepresentation by the party to whom it was directed; and
27

28

resulting damage." *Shamsian v. Atlantic Richfield Co.*, 107 Cal.App.4th 967, 132 Cal.Rptr.2d 635, 647 (2003).

<u>Dent v. Nat'l Football League</u>, 902 F.3d 1109, 1123 (9th Cir. 2018). "An essential element of a cause of action for negligent misrepresentation is that the defendant must have made a misrepresentation as to a past or existing material fact." <u>Gentry v. eBay, Inc.</u>, 99 Cal. App. 4th 816, 835 (2002) (citation omitted). A "promise to perform at some future time" does "not involve a past or existing material fact." <u>Tarmann v. State Farm Mut. Auto. Ins. Co.</u>, 2 Cal. App. 4th 153, 158 (1991) (holding that insurance company's representation that "it *would* pay for [plaintiff's] repairs *immediately upon their completion*" involved a promise to perform at some future time rather than a past or existing material fact and thus, plaintiff failed to state a claim for negligent misrepresentation).

<u>Tarmann</u> noted that "[c]ertain broken promises of future conduct may, however, be actionable." 2 Cal. App. 4th at 158.

> To maintain an action for deceit based on a false promise, one must specifically allege and prove, among other things, that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing. Given this requirement, an action based on a false promise is simply a type of *intentional* misrepresentation, i.e., actual fraud.

<u>Id.</u> at 159 (citations omitted).

Here, Plaintiffs have failed to plead with particularity every fact essential to sustain a cause of action for negligent misrepresentation. <u>See</u> <u>Searcy</u>, 177 Cal. App. 3d at 802 ("[T]o state a cause of action every fact essential to the existence of statutory liability must be pleaded with particularity[.]"). Plaintiffs contend that the misrepresentation at issue in this case is the "false representation that security cameras would be installed by the start of the school year." (ECF No. 36 at 11). Such a representation of future action does not involve a past or existing material fact, and thus, Plaintiffs have failed to plead a requisite element for negligent misrepresentation. <u>See, e.g.</u>, <u>White v. J.P. Morgan Chase, Inc.</u>, 167 F. Supp. 3d 1108, 1117 (E.D. Cal. 2016) (dismissing negligent misrepresentation claim because "Defendants' representations that Plaintiffs would receive a loan modification once the oral information was approved were promises as to *future*

1  action" and "do not involve the misrepresentation of a past or existing material fact"), aff'd sub
2  nom. White v. JPMorgan Chase & Co., 702 F. App'x 642 (9th Cir. 2017); Grey Fox, LLC v.
3  Plains All Am. Pipeline, L.P., No. CV 16-3157 PSG (JEMx), 2019 WL 4196066, at *10 (C.D.
4  Cal. Apr. 8, 2019) (finding that "Plaintiffs cannot maintain an action for negligent
5  misrepresentation" because Defendant's representation that "once installed, the Pipeline would
6  be properly monitored and maintained, and could be repaired, maintained, operated, removed,
7  and replaced within the parameters of the rights-of-way provided in the easements" concerned
8  "future actions rather than past or existing material facts"); Trombley Enterprises, LLC v. Sauer,
9  Inc., No. 5:17-cv-04568-EJD, 2019 WL 452044, at *4 (N.D. Cal. Feb. 5, 2019) (dismissing
10  negligent misrepresentation claim because Defendant's alleged misrepresentations that it would
11  "complete construction of the Project in accordance with the timeline set forth in the Schedules,"
12  give Plaintiff "eleven months to complete the painting," and pay Plaintiff for its work "relate to
13  future events").

14      Accordingly, as the representations made by PUSD staff concerned future action related
15  to security camera installation, Plaintiffs' Tenth Cause of Action does not involve a
16  misrepresentation of a past or existing material fact and should be dismissed with leave to
17  amend.

18      **C.  National Guard**

19      Defendants Army National Guard and California Army National Guard (collectively, the
20  "National Guard") move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), arguing that: (1)
21  Bivens claims may not be asserted against the United States of America or its agencies; (2) the
22  Court lacks jurisdiction over Plaintiffs' tort claims because federal agencies are not proper
23  defendants in a claim under the Federal Tort Claims Act ("FTCA") and the FTCA bars claims
24  for negligent hiring, retention, and supervision; (3) negligent infliction of emotional distress is
25  not an independent tort under California law; (4) Plaintiffs fail to identify any fiduciary duty
26  owed to Plaintiffs by the National Guard; (5) Plaintiffs have no cause of action against the
27  National Guard for "violation" of the FTCA or California Government Tort Claims Act; and (6)
28  Plaintiffs have no cause of action under the National Guard Claims Act. (ECF No. 39-1 at 1–2).

1        1.  Bivens

2        Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 389 (1971), "created a

3   remedy for violations of constitutional rights committed by federal officials acting in their

4   individual capacities. In a paradigmatic Bivens action, a plaintiff seeks to impose personal

5   liability upon a federal official based on alleged constitutional infringements he or she

6   committed against the plaintiff." Consejo de Desarrollo Economico de Mexicali, A.C. v. United

7   States, 482 F.3d 1157, 1173 (9th Cir. 2007). A Bivens claim is only available against officers in

8   their individual capacities. Morgan v. United States, 323 F.3d 776, 780 n.3 (9th Cir. 2003);

9   Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996). "This is because a Bivens suit against a

10  defendant in his or her official capacity would merely be another way of pleading an action

11  against the United States, which would be barred by the doctrine of sovereign immunity."

12  Consejo, 482 F.3d at 1173 (citing Nurse v. United States, 226 F.3d 996, 1004 (9th Cir. 2000)).

13  For that reason, "the Supreme Court has refused to extend Bivens remedies from individuals to

14  agencies." Consejo, 482 F.3d at 1173 (citing FDIC v. Meyer, 510 U.S. 471, 484 (1994)).

15        Here, the FAC's First Cause of Action alleges violations of the Fourth and/or Fourteenth

16  Amendments pursuant to 42 U.S.C. § 1983 and Bivens against Army National Guard, California

17  Army National Guard, and California Military Department. (ECF No. 19 at 3, 5). In the

18  opposition, Plaintiffs state that they "do not intend to allege a *Bivens* claim against the National

19  Guards entities," but rather "against the relevant National Guards employees in their individual

20  capacities." (ECF No. 40 at 5). Notwithstanding Plaintiffs' stated intentions, the FAC's First

21  Cause of Action asserts a Bivens claim against Defendant National Guard rather than National

22  Guard employees in their individual capacities. Accordingly, the undersigned recommends that

23  the Bivens claim be dismissed for lack of subject-matter jurisdiction. See Consejo, 482 F.3d at

24  1173.

25        The Court now turns to whether leave to amend should be granted. Plaintiffs request the

26  opportunity to amend the FAC to the extent that any clarification is needed. Plaintiffs state that

27  they do not currently know the identities of the relevant National Guard employees but it is their

28  "intention to add those individual defendants as Doe Defendants once they are identified through

1  discovery." (ECF No. 40 at 5). Defendant National Guard argues that the <u>Bivens</u> claim should be
2  dismissed without leave to amend because "[i]n their Opposition, Plaintiffs make no effort to
3  identify the specific constitutional right they contend was violated, the manner in which it was
4  violated, or the identity – even generally – of the federal actor or actors who they contend
5  violated it." (ECF No. 41 at 3).

6      Courts "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P.
7  15(a)(2), and this "policy of allowing amendments is to be applied with extreme liberality,"
8  <u>Waldrip</u>, 548 F.3d at 732 (internal quotation marks and citation omitted). However, a court "may
9  exercise its discretion to deny leave to amend due to 'undue delay, bad faith, or dilatory motive
10 on part of the movant, repeated failure to cure deficiencies by amendments previously allowed,
11 undue prejudice to the opposing party . . . , [and] futility of amendment." <u>Carvalho</u>, 629 F.3d at
12 892–93 (alterations in original) (quoting <u>Foman</u>, 371 U.S. at 182). "Futility of amendment can,
13 by itself, justify the denial of a motion for leave to amend," <u>Bonin</u>, 59 F.3d at 845, but
14 "[u]ndue delay by itself is insufficient to justify denying leave to amend," <u>United Healthcare Ins.</u>
15 <u>Co.</u>, 848 F.3d at 1167. "[I]t is the consideration of prejudice to the opposing party that carries the
16 greatest weight." <u>Eminence Capital</u>, 316 F.3d at 1052. "Absent prejudice, or a strong showing of
17 any of the remaining [ ] factors, there exists a *presumption* under Rule 15(a) in favor of granting
18 leave to amend." <u>Id.</u>

19     Here, Defendant National Guard has not argued that granting leave to amend would cause
20 them prejudice, and there has not been a strong showing of any of the remaining factors.
21 Accordingly, the undersigned recommends that Plaintiffs be granted leave to amend to clarify the
22 <u>Bivens</u> claim regarding the constitutional violation at issue and the federal officials involved in
23 said constitutional violation.

24              2.  <u>Federal Tort Claims Act</u>

25     "The United States enjoys immunity from suit unless it has expressly waived such
26 immunity and consented to be sued. Such waiver cannot be implied, but must be unequivocally
27 expressed. When the United States has not unequivocally consented to suit, a court must dismiss
28 the case, because such consent is a prerequisite for jurisdiction." <u>Nieves Martinez v. United</u>

1   States, 997 F.3d 867, 875–76 (9th Cir. 2021) (internal citations and quotation marks omitted).

2   The Federal Tort Claims Act ("FTCA") "constitutes a limited waiver of sovereign immunity," id.

3   at 876, and provides in pertinent part:

> "[T]he district courts . . . have exclusive jurisdiction of civil
> actions on claims against the United States, for money damages . . .
> for injury or loss of property, or personal injury or death caused by
> the negligent or wrongful act or omission of any employee of the
> Government while acting within the scope of his office or
> employment, under circumstances where the United States, if a
> private person, would be liable to the claimant in accordance with
> the law of the place where the act or omission occurred."

9   28 U.S.C. § 1346(b)(1).

10   ### a.  Proper Defendant

11   "The FTCA is the exclusive remedy for tortious conduct by the United States, and it only

12   allows claims against the United States. Although such claims can arise from the acts or

13   omissions of United States agencies (28 U.S.C. § 2671), an agency itself cannot be sued under

14   the FTCA." FDIC v. Craft, 157 F.3d 697, 706 (9th Cir. 1998). Accordingly, the undersigned

15   recommends that Plaintiffs' Second, Third, and Fourth Causes of Action be dismissed for lack of

16   jurisdiction. See Kennedy v. U.S. Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998) (holding that

17   "[b]ecause the United States is the only proper party defendant in an FTCA action, the district

18   court correctly dismissed [the] complaint as improperly filed against" a federal agency).

19   ### b.  Discretionary Function Exception

20   "The liability of the United States under the FTCA is subject to the various exceptions

21   contained in § 2680, including the 'discretionary function' exception[.]" United States v.

22   Gaubert, 499 U.S. 315, 322 (1991), which provides that the United States is not liable for:

> Any claim based upon an act or omission of an employee of the
> Government, exercising due care, in the execution of a statute or
> regulation, whether or not such statute or regulation be valid, or
> based upon the exercise or performance or the failure to exercise or
> perform a discretionary function or duty on the part of a federal
> agency or an employee of the Government, whether or not the
> discretion involved be abused.

27   28 U.S.C. § 2680(a). "Because the purpose of the exception is to prevent judicial second-

28   guessing of legislative and administrative decisions grounded in social, economic, and political

21

1    policy through the medium of an action in tort, when properly construed, the exception protects

2    only governmental actions and decisions based on considerations of public policy." Gaubert, 499

3    U.S. at 323 (internal citations and quotation marks omitted).

4    "The Ninth Circuit applies a two-step analysis when determining whether conduct falls

5    under the discretionary-function exception." Nieves Martinez, 997 F.3d at 876 (citing Sabow v.

6    United States, 93 F.3d 1445, 1451 (9th Cir. 1996)).

> First, we ask whether the challenged actions involve an element of
> judgment or choice. If a federal statute, regulation, or policy
> specifically prescribes a course of action for an employee to
> follow, the act is not discretionary because the employee has no
> rightful option but to adhere to the directive. Second, if the court
> determines that the challenged actions involve an element of
> choice or judgment, the court then determines whether that
> judgment is of the kind that the discretionary function exception
> was designed to shield. More specifically, if the judgment involves
> considerations of social, economic, or political policy, the
> exception applies.

13   Nieves Martinez, 997 F.3d at 876 (internal citations, quotation marks, and brackets omitted).

14   Defendant National Guard argues that the discretionary function exception to the FTCA

15   bars claims for negligent hiring, training, and supervision of employees, and thus, Plaintiffs'

16   Second Cause of Action should be dismissed. (ECF No. 39-1 at 6). Plaintiffs argue that

17   Defendant National Guard's statement that negligent hiring, training, and supervision of

18   employees are barred by the FTCA "is simply incorrect." (ECF No. 40 at 7). Plaintiffs also argue

19   that Defendant National Guard improperly limits Plaintiffs' negligence claim to negligent hiring,

20   training, and supervision of employees and ignores: (1) the *respondeat superior* allegations

21   regarding Mr. Van Norton, who was acting in his capacity as Defendant National Guard's

22   employee; (2) the related allegations that Defendant National Guard failed to act on other

23   allegations, investigations, and complaints about Mr. Van Norton's inappropriate behavior; and

24   (3) the allegations that Defendant National Guard failed to have appropriate policies, procedures,

25   and actions in place to ensure that Defendant National Guard's employees promptly identify,

26   address, correct, and/or warn about the dangers that caused Plaintiffs' injuries. (Id. at 6).

27   The Ninth Circuit and other courts "have held that decisions relating to the hiring,

28   training, and supervision of employees usually involve policy *judgments* of the type Congress

1  intended the discretionary function exception to shield." Miller v. United States, 992 F.3d 878,

2  886 (9th Cir. 2021) (internal quotation mark omitted) (quoting Vickers v. United States, 228 F.3d

3  944, 950 (9th Cir. 2000)). See Nurse v. United States, 226 F.3d 996, 1001 (9th Cir. 2000)

4  (holding that plaintiff's claims of "negligent and reckless employment, supervision and training

5  of" employees "fall squarely within the discretionary function exception").

6         In support of their contention that the FAC appropriately alleged facts to support a claim

7  for negligent hiring, supervision, employment, and training, Plaintiffs cite to: Senger v. United

8  States, 103 F.3d 1437 (9th Cir. 1996); Brock v. United States, 64 F.3d 1421 (9th Cir. 1995);

9  Bennett v. United States, 803 F.2d 1502 (9th Cir. 1986); and Lins v. United States, 847 F. App'x

10 159 (4th Cir. 2021). These cases are distinguishable from the instant matter. Senger and Bennet

11 concerned the "assault and battery" or intentional tort exception to the FTCA rather than the

12 discretionary function exception at issue here.[7] In Brock, the district court dismissed the

13 plaintiff's FTCA negligent supervision claims because they were precluded by Title VII of the

14 Civil Rights Act of 1964. 64 F.3d at 1422. The Ninth Circuit reversed, holding that although

15 Title VII is the exclusive remedy for federal employees' claims of sexual discrimination, the

16 plaintiff's rape was a highly personal violation beyond the meaning of discrimination and was

17 separately actionable under the FTCA. Id. at 1423–24. In Lins, the Fourth Circuit disagreed with

18 the Ninth Circuit's decision in Nurse, stating that "we do not agree that these cases

19 unequivocally bar negligent hiring, supervision, and retention claims." 847 F. App'x at 164.

20 However, Lins is an unpublished opinion by the Fourth Circuit that is not binding on this Court.

21        The Court finds Doe v. Holy See, 557 F.3d 1066 (9th Cir. 2009), to be instructive. The

22 plaintiff was sexually abused by a priest and brought claims for negligent retention and

23 supervision and negligent failure to warn against entities related to the Catholic Church because

24 they knew or should have known that the priest had a history of sexually abusing children. Id. at

25 ────────────

[7] See Gregory C. Sisk, Holding the Federal Government Accountable for Sexual Assault, 104 Iowa L. Rev. 731, 753
26 (2019) ("While the Ninth Circuit may not extend the FTCA's assault-and-battery exception to cover episodes of
careless employee management, that court has since regarded claims that challenge decisions by policy-makers on
27 training and supervision as 'fall[ing] squarely within the discretionary function exception' to the FTCA. Thus, even
in the single circuit that has recognized the distinction between a claim for negligence in hiring and supervision and
28 direct vicarious liability for assault and battery, many such claims are doomed to failure." (citation and footnote
omitted)).

1069. The Ninth Circuit held that the district court erred in exercising jurisdiction over these

claims based on the discretionary function exception to the Foreign Sovereign Immunities Act

("FSIA").[8] Id. at 1083. The Ninth Circuit found that the plaintiff did not plead any actions that

fell facially outside the discretionary function exception because: he did not state the terms of the

alleged policy "of not firing priests for, and not warning others about, their abusive acts" or

"describe any documents, promulgations, or orders embodying" said policy; and the complaint

did not otherwise allege that the decisions to retain the priest and not warn about his proclivities

involved no element of judgment, choice, or discretion. Holy See, 557 F.3d at 1084. "[T]he

decision of whether and how to retain and supervise an employee, as well as whether to warn

about his dangerous proclivities, are the type of discretionary judgments that the exclusion was

designed to protect" because "social, economic, or political policy considerations could have

influenced the decision." Id. at 1085.

Similarly, here, whether and how to hire, retain, train, and supervise employees, as well

as whether to warn about an employee's dangerous proclivities, are ordinarily discretionary, and

Plaintiffs have not alleged that said decisions were constrained by a federal statute, regulation, or

policy, or involved no element of judgment, choice, or discretion. See Berkovitz by Berkovitz v.

United States, 486 U.S. 531, 536 (1988) ("[C]onduct cannot be discretionary unless it involves

an element of judgment or choice. Thus, the discretionary function exception will not apply

when a federal statute, regulation, or policy specifically prescribes a course of action for an

employee to follow." (internal citation omitted)); Holy See, 557 F.3d at 1084 ("While the burden

of pro[of] . . . ultimately falls on the . . . entity asserting the discretionary function exception, 'a

plaintiff must advance a claim that is facially outside the discretionary function exception in

order to survive a motion to dismiss.'" (quoting Prescott v. United States, 973 F.2d 696, 702 &

n.4 (9th Cir. 1992))). Accordingly, Plaintiffs' claims for negligent hiring, supervision,

employment, training, and failure to warn fall within the discretionary function exception, and

undersigned recommends that the Second Cause of Action be dismissed.

---

[8] The language of the FSIA's "discretionary function closely parallels the language of a similar exclusion in the Federal Tort Claims Act ("FTCA"), so we look to case law on the FTCA when interpreting the FSIA's discretionary function exclusion." Holy See, 557 F.3d at 1083.

### c.  *Respondeat Superior*

To the extent that the Second Cause of Action also includes "respondeat superior allegations regarding Mr. Van Norton, who was acting in his capacity as Defendant National Guard's employee," (ECF No. 40 at 6), it is still subject to dismissal due to the FTCA's intentional tort exception, as argued by Defendant in the reply, (ECF No. 41 at 5). The FTCA's "broad waiver of sovereign immunity is subject to a number of exceptions set forth in § 2680. One such exception, relating to intentional torts, preserves the Government's immunity from suit for '[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.'" Millbrook v. United States, 569 U.S. 50, 52 (2013) (quoting 28 U.S.C. § 2680(h)). "[N]egligence based entirely on a theory of respondeat superior . . . cannot give rise to liability on the part of the United States under the FTCA for the intentional torts of government employees[.]" Senger, 103 F.3d at 1441. Accordingly, the Second Cause of Action should be dismissed.

### d.  **Negligent Infliction of Emotional Distress**

Defendant National Guard asserts that because negligent infliction of emotional distress is not a separate tort under California law, Plaintiffs' Third Cause of Action should be dismissed. (ECF No. 39-1 at 7). To the extent the Third Cause of Action is duplicative of or ancillary to the Second Cause of Action, Plaintiffs request to amend the FAC to clarify. (ECF No. 40 at 7–8).

In California, there "is no independent tort of negligent infliction of emotional distress." Doe v. Gangland Prods., Inc., 730 F.3d 946, 961 (9th Cir. 2013) (internal quotation mark omitted) (quoting Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 984 (1993)). Because Plaintiffs' Second Cause of Action is for negligence, the Third Cause of Action is redundant and should be dismissed without leave to amend.[9] See, e.g., Rabieh v. United States, No. 5:19-CV-00944-EJD, 2019 WL 5788673, at *3 (N.D. Cal. Nov. 6, 2019) (dismissing negligent infliction of emotional distress claim as redundant because "California law, as applied in an FTCA case,

---

[9] This conclusion does not preclude Plaintiffs from clarifying the negligence cause of action and incorporating the allegations regarding negligent infliction of emotional distress. The Court also notes that the discussion in section III(C)(2)(e), *infra*, may be applicable to Plaintiffs' negligent infliction of emotional distress allegations.

1  does not recognize negligent infliction of emotional distress as a separate tort from negligence

2  . . . [and] Plaintiff's first cause of action is for negligence").

### e.  Breach of Fiduciary Duty

Defendant National Guard asserts that Plaintiffs fail to state a claim against the National

Guard for breach of fiduciary duty, arguing that the allegations in the Fourth Cause of Action

make clear that the gravamen of the claim is the alleged negligent hiring, employment,

supervision, and training of employees, which falls within the discretionary function exception,

and that Plaintiffs fail to allege the existence of any fiduciary duty under California law. (ECF

No. 39-1 at 8).

> To determine whether section 2680 bars a proposed claim, we "look[ ] beyond the labels," *Thomas-Lazear v. FBI*, 851 F.2d 1202, 1207 (9th Cir. 1988), and evaluate the alleged "conduct on which the claim is based," *Mt. Homes, Inc. v. United States*, 912 F.2d 352, 356 (9th Cir. 1990). For instance, in *Thomas-Lazear*, we noted that "the claim for negligent infliction of emotional distress is nothing more than a restatement of the [originally barred] slander claim" because "the Government's actions that constitute a claim for slander are essential to [the plaintiff]'s claim for negligent infliction of emotional distress." 851 F.2d at 1207. Hence, it was also barred by section 2680(h) as "[t]here is no other government conduct upon which [the claim] can rest." *Id.* (quoting *Metz v. United States*, 788 F.2d 1528, 1535 (11th Cir. 1986)); *see also Alexander v. United States*, 787 F.2d 1349, 1350–51 (9th Cir. 1986) (holding that negligence claim was actually one of misrepresentation); *Leaf v. United States*, 661 F.2d 740, 742 (9th Cir. 1981) (same). Thus, if the governmental conduct underlying a claim falls within an exception outlined in section 2680, the claim is barred, no matter how the tort is characterized. *See Mt. Homes*, 912 F.2d at 356.

DaVinci Aircraft, Inc. v. United States, 926 F.3d 1117, 1123 (9th Cir.), cert. denied, 140 S. Ct.

439 (2019).

As noted by Plaintiffs in their opposition, the governmental conduct underlying the

breach of fiduciary duty claim is:

> that Mr. Van Norton was Defendants' employee; that Defendants helped to vet, recommend and place Mr. Van Norton at PMA/PUSD; that complaints to Defendants' officials regarding Mr. Van Norton went largely unaddressed and ignored; that Defendants negligently failed to protect J.G. from a sexual predator; that Defendants breached their obligation to ensure that their vetting, hiring, supervising, retaining, placement and/or

1
2
3

> training of employees was adequate; that Defendants negligently
> failed to identify, address, correct, and/or warn about the
> dangerous situation that caused J.G.'s injuries; and that Plaintiffs
> were significantly injured by all of the above-noted failures.

4  (ECF No. 40 at 8). The governmental conduct underlying the breach of fiduciary duty claim is

5  the same as the conduct underlying the negligence claim. As set forth in section III(C)(2)(b),

6  *supra*, such conduct falls within the discretionary function exception.

7  In the opposition to the motion to dismiss, Plaintiffs rely on Virginia G. v. ABC Unified

8  School Dist., 15 Cal. App. 4th 1848, 1855 (1993), and Van Ort v. Estate of Stanewich, 92 F.3d

9  831, 841 (9th Cir. 1996), to establish that there is a fiduciary duty owed by Defendant National

10 Guard to Plaintiffs. (ECF No. 40 at 9). In Virginia G., the California Court of Appeal noted that

11 although "the conduct of teachers who sexually molest students under their supervision will not

12 be imputed to school districts to permit recovery by injured students from the employing districts

13 under the doctrine of respondeat superior," "claims against school districts premised on their

14 own direct negligence in hiring and supervising teachers may be pursued." 15 Cal. App. 4th at

15 1854–55. First, the Court notes that Defendant National Guard is not a school district and that the

16 FAC does not allege that the National Guard hired or supervised Van Norton at PMU. (See ECF

17 No. 19 at 6 (alleging that the National Guard "helped to vet, recommend and place Mr. Van

18 Norton at PMA/PUSD")). Further, Virginia G. did not involve the FTCA and as set forth above,

19 the governmental conduct underlying the Fourth Cause of Action falls within the discretionary

20 function exception. Similarly, Van Ort is inapposite because it did not involve the FTCA and the

21 discretionary function exception.

22 Accordingly, Plaintiffs' Fourth Cause of Action for breach of fiduciary duty falls within

23 the discretionary function exception, and the undersigned recommends that it be dismissed.

24 ### f.   Leave to Amend

25 Courts "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P.

26 15(a)(2), and this "policy of allowing amendments is to be applied with extreme liberality,"

27 Waldrip, 548 F.3d at 732 (internal quotation marks and citation omitted). However, a court "may

28 exercise its discretion to deny leave to amend due to 'undue delay, bad faith, or dilatory motive

1   on part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

2   undue prejudice to the opposing party . . . , [and] futility of amendment." <u>Carvalho</u>, 629 F.3d at

3   892–93 (alterations in original) (quoting <u>Foman</u>, 371 U.S. at 182). "Futility of amendment can,

4   by itself, justify the denial of a motion for leave to amend," <u>Bonin</u>, 59 F.3d at 845, but

5   "[u]ndue delay by itself is insufficient to justify denying leave to amend," <u>United Healthcare Ins.</u>

6   <u>Co.</u>, 848 F.3d at 1167. "[I]t is the consideration of prejudice to the opposing party that carries the

7   greatest weight." <u>Eminence Capital</u>, 316 F.3d at 1052. "Absent prejudice, or a strong showing of

8   any of the remaining [ ] factors, there exists a *presumption* under Rule 15(a) in favor of granting

9   leave to amend." <u>Id.</u>

10          Here, Defendant National Guard has not argued that granting leave to amend would cause

11   them prejudice, and there has not been a strong showing of any of the remaining factors.

12   Accordingly, the undersigned recommends that Plaintiffs be granted leave to amend the Second

13   and Fourth Causes of Action to name a proper defendant and to plead claims that are facially

14   outside the discretionary function exception.

15                     3.   <u>"Violations" of the FTCA and California Government Tort Claims Act</u>

16          In the FAC's Fifth and Sixth Causes of Action, Plaintiffs allege violations of the FTCA

17   and the California Government Tort Claims Act. (ECF No. 19 at 13, 14). Defendant National

18   Guard argues that these claims should be dismissed because they only contain allegations

19   regarding exhaustion of administrative remedies and do not support a separate cause of action.

20   (ECF No. 39-1 at 9). "Plaintiffs agree that the Fifth and Sixth Causes of Action are properly read

21   together with the other causes and action, and may not be separate causes of actions, but should

22   instead be viewed as general allegations of the FAC." (ECF No. 40 at 9–10). However, because

23   Defendant National Guard "failed to cite any legal authority" for dismissal, "Plaintiffs maintain

24   that these causes of action are properly pleaded" and dismissal should be denied.[10] (<u>Id.</u> at 10).

25   ///

26   _____

27   [10] The Court notes that in the opposition to Defendant CMD's motion to dismiss, Plaintiffs agreed with Defendant CMD that "their Sixth Cause of Action is properly read together with the other causes of action, and may not actually be a separate cause of action, but should instead be viewed as general allegations of the FAC." (ECF No. 31

28   at 8).

1    The FTCA "allows a plaintiff to bring certain state-law tort suits against

2  the Federal Government" by "waiving sovereign immunity so parties can sue the United States

3  directly for harms caused by its employees[.]" <u>Brownback v. King</u>, 141 S. Ct. 740, 745, 746

4  (2021). The FTCA's limited waiver of sovereign immunity so that parties can use the United

5  States directly for harms caused by its employees "under circumstances where the United States,

6  if a private person, would be liable to the claimant in accordance with the law of the place where

7  the act or omission occurred," 28 U.S.C. § 1346(b), is not a separate cause of action for a

8  "violation" of the FTCA. <u>See</u> <u>Kim v. Stahman</u>, No. CV-10-0213-RHW, 2010 WL 1655606, at *3

9  (W.D. Wash. Apr. 19, 2010) ("The source of Plaintiff's confusion appears to be his construing

10  the FTCA as a separate cause of action rather than a limited waiver of sovereign immunity."),

11  <u>aff'd</u>, 453 F. App'x 757 (9th Cir. 2011). Similarly, the California Government Tort Claims Act

12  "specifies the cases in which a public entity is liable for injuries arising out of its acts or

13  omissions, or those of its employees. Under the Tort Claims Act, sovereign immunity remains

14  the rule in California, and governmental liability is limited to exceptions specifically set forth in

15  statute." <u>Los Angeles Unified Sch. Dist. v. Superior Ct.</u>, 64 Cal. App. 5th 549, 554 (2021)

16  (citations omitted). The limited waiver of sovereign immunity is not a separate cause of action

17  for a "violation" of the California Government Tort Claims Act.

18    Accordingly, the undersigned recommends that Plaintiffs' Fifth and Sixth Causes of

19  Action be dismissed without leave to amend.[11]

20                4.   <u>National Guard Claims Act</u>

21  The National Guard Claims Act ("NGCA") provides in pertinent part:

22    (a) Under such regulations as the Secretary of the Army or
     Secretary of the Air Force may prescribe, he or, subject to

23    appeal to him, the Judge Advocate General of the armed force
     under his jurisdiction, if designated by him, may settle and pay

24    in an amount not more than $100,000 a claim against the
     United States for—

25

26    (1) damage to, or loss of, real property, including damage or
         loss incident to use and occupancy;

27

---

28  [11] This conclusion does not preclude Plaintiffs from including the allegations set forth in the Fifth and Sixth Causes of Action to any other causes of action or in the general allegations of any future amended complaint.

1

2

3

        (2) damage to, or loss of, personal property, including property
             bailed to the United States or the National Guard and
             including registered or insured mail damaged, lost, or
             destroyed by a criminal act while in the possession of the
             National Guard; or

4

5

6

7

8

9

        (3) personal injury or death; either caused by a member of the
             Army National Guard or the Air National Guard, as the
             case may be, while engaged in training or duty under
             section 316, 502, 503, 504, or 505 of this title or any other
             provision of law for which he is entitled to pay
             under section 206 of title 37, or for which he has waived
             that pay, and acting within the scope of his employment; or
             otherwise incident to noncombat activities of the Army
             National Guard or the Air National Guard, as the case may
             be, under one of those sections.

10   32 U.S.C. § 715(a)(1)–(3). The NGCA excludes claims covered under the FTCA. 32 U.S.C.

11   § 715(b)(2). Further, "[n]otwithstanding any other provision of law, the settlement of a claim

12   under this section is final and conclusive." 32 U.S.C. § 715(g), (h).

13         Defendant National Guard asserts that the Seventh Cause of Action under the NGCA

14   should be dismissed for lack of jurisdiction and for failure to state a claim because claims

15   brought under the Act are handled administratively without any provision for judicial review.

16   (ECF No. 39-1 at 10). Plaintiffs argue that the NGCA does authorize personal injury claims

17   arising from noncombat activities caused by National Guard soldiers, as alleged in the FAC, and

18   that the motion to dismiss should be denied, noting that "Rule 12(b)(6) motions are 'especially

19   disfavored' where the complaint sets forth a novel legal theory 'that can best be assessed after

20   factual development.'" (ECF No. 40 at 11 (quoting McGary v. City of Portland, 386 F.3d 1259,

21   1270 (9th Cir. 2004)).

22         There is very little caselaw regarding the NGCA, which has been described by the Ninth

23   Circuit as providing "only limited administrative relief." United States v. State of Hawaii, 832

24   F.2d 1116, 1118 (9th Cir. 1987). The Eleventh Circuit has held that a district court does not have

25   subject-matter jurisdiction to review a decision by the Secretary of the Army denying a claim

26   under the NGCA due to the statutory preclusion of review of such a decision in § 715(g) and (h).

27   Rhodes v. United States, 760 F.2d 1180, 1181 (11th Cir. 1985).

28   ///

1       The Ninth Circuit has addressed the finality provision of the Military Claims Act

2   ("MCA"), which is a counterpart to the NGCA for claims involving a member or civilian

3   employee of the Army, Navy, Air Force, Marine Corps, or Coast Guard. See 10 U.S.C. § 2731 et

4   seq. The finality provision of the MCA contains identical language to that of the NGCA:

5   "Notwithstanding any other provision of law, the settlement of a claim under . . . this title is final

6   and conclusive." 10 U.S.C. § 2735. The Ninth Circuit held "in accord with the First, Fifth, Tenth

7   and District of Columbia Circuits, that the MCA's finality provision generally precludes federal

8   courts from reviewing administrative decisions by the Secretary," but recognized that "review of

9   constitutional claims may still be available upon a sufficiently pleaded allegation of a serious

10  constitutional violation 'going to the heart of the administrative determination.'" Hata v. United

11  States, 23 F.3d 230, 233 (9th Cir. 1994) (quoting Lindahl v. Office of Personnel Management,

12  470 U.S. 768, 791 (1985)).

13      The NGCA provides "only limited administrative relief," Hawaii, 832 F.2d at 1118, and

14  the Ninth Circuit has held that the MCA's finality provision, which contains identical language

15  to the NGCA's finality provision, generally precludes judicial review of the Secretary's

16  administrative decisions. Moreover, the FAC does not contain "a sufficiently pleaded allegation

17  of a serious constitutional violation going to the heart of the administrative determination" that

18  may be reviewed. Hata, 23 F.3d at 233. Accordingly, the undersigned recommends that

19  Plaintiffs' Seventh Cause of Action be dismissed with leave to amend.

20  **IV.     CONCLUSION**

21      Accordingly, the undersigned HEREBY RECOMMENDS that:

22      1.   Defendant California Military Department's motion to dismiss (ECF No. 25) be

23          GRANTED;

24      2.   Defendant Porterville Unified School District's motion to dismiss (ECF No. 33) be

25          GRANTED IN PART and DENIED IN PART;

26      3.   Defendant National Guard's motion to dismiss (ECF No. 39) be GRANTED;

27      4.   Plaintiffs' § 1983 claim against Defendant CMD and the Third, Fifth, and Sixth

28          Causes of Action (ECF No. 19) be DISMISSED without leave to amend; and

1       5.  Plaintiff be granted leave to file a Second Amended Complaint.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **THIRTY (30) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **FOURTEEN (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 17, 2021**        /s/ *Erica P. Grosjean*

                                   UNITED STATES MAGISTRATE JUDGE